UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| REFRACTORY SERVICE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:06 CV 073 PS |
| ) | |
| SHAW REFRACTORIES, INC., ROBERT W. ) | |
| MEACHAM, ROBERT M. NEWBERRY, and ) | |
| JOSEPH GILARSKI, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the Court is Plaintiff's Motion for Default Judgment against Defendants Robert M. Newberry and Joseph Gilarski. [Docket No. 30.] This dispute arose when Plaintiff Refractory Service Corporation (RSC) filed a Verified Complaint against Defendants, alleging that they unlawfully took trade secrets, proprietary information, and other property from Plaintiff with the intent to use the property for the benefit of Defendant Shaw Refractories, Inc. ("Shaw"), a new company in the refractory industry that was to compete directly with Plaintiff. Plaintiff has already entered into a settlement agreement with Shaw and Meacham, part of which provided for entry of a permanent injunction against those Defendants. [Docket No. 32.] Because Defendants Newberry and Gilarski have failed to respond to the Complaint, Plaintiff's Motion for Default Judgment is **GRANTED**.

## BACKGROUND

Plaintiff is a provider of proprietary refractory services, making products primarily marketed toward the steel industry. (Complaint ¶ 1.) The three individual defendants, Meacham, Newberry, and Gilarski, are former RSC employees who each played roles in helping

to start up Shaw, a competitor refractory services company. (Complaint ¶¶ 2-5.) Because Meacham and Shaw have already settled with Plaintiff and, as part of that settlement, have agreed to the permanent injunction ordered by this Court, the Court focuses now on the allegations that specifically pertain to Newberry and Gilarski.

Plaintiff alleges that Newberry, Plaintiff's former plant manager, and Gilarski, another former employee, had access to restricted, confidential, and proprietary trade secret information relating to RSC's product mixes, formulas, and processes. (Complaint ¶ 17.) In the course of their employment with RSC, both Defendants had access to the Mix Book, the compilation of RSC's proprietary formulas, mixes, and processes, which was kept in a locked office protected by a security alarm. (*Id.*) None of the individual defendants had access to keys or alarm codes for the locked office. (*Id.* at ¶ 18.) Both Defendants signed a Secrecy Agreement with RSC in which each agreed to maintain the confidentiality and secrecy of any confidential information disclosed to him by RSC. (*Id.*)

Plaintiff further alleges that, in November 2005, Newberry gave notice that he was leaving RSC, telling RSC that he was going to work as a manager for a restaurant chain. (*Id.* at ¶¶ 13-14.) In reality, he went to work as Vice President of Shaw. (*Id.* at ¶¶ 4, 15.) Gilarski was terminated for reasons not disclosed in the Complaint. (*Id.* at ¶ 12.) Gilarski invested $10,000 in Shaw. (*Id.*) Plaintiff alleges that Gilarski misappropriated trade secret information at Shaw's request, and for the benefit of Shaw. (*Id.*)

On or about January 18, 2006, the East Chicago Police Department searched Newberry's home and found an unauthorized copy of the Mix Book. (*Id.* at ¶ 21.) Police also searched the Shaw business premises and found a number of items of personal property that had been stolen

from RSC.  (*Id*. at ¶¶ 22-23.)  Plaintiff alleges that the only purpose served by many of these items (which include large machine steel flanges and blast furnace "blowpipes" and "goosenecks") is to produce the kinds of products that RSC produced using its proprietary Mix Book.  (*Id*. at ¶ 23.)  The Complaint further alleges that Shaw violated copyright law by distributing unauthorized copies of a copyrighted photograph on its business cards.  (*Id*. at ¶ 28.)

Plaintiff attaches to its motion of default judgment the plea agreements that Newberry and Gilarski entered into with the State of Indiana on criminal charges arising out of the incidents described in its Complaint. (Pl.'s Ex. C.)  Both pled guilty to theft, a Class D felony.  (*Id*.) Newberry stipulated that he entered RSC after business hours and stole "two flanges, two blow pipes, and a goose neck."  (*Id*.)  He also stipulated that he asked Gilarski "to take 'batch sheets' (trade secrets), and/or a mix book and make copies of them for his own use."  (*Id*.)  He acknowledged that he exerted control over these items with the intent to deprive RSC of their use.  (*Id*.)  Gilarski stipulated that he entered RSC after business hours and "took a propane tank, and helped load steel pipes, flanges, elbows, blow pipes, and goose necks into a van."  (*Id*.)  He agreed that he took the batch sheets "and/or a mix book" and made copies of them with the intent to deprive RSC of their value or use.  (*Id*.)  Defendants Newberry and Gilarski have never responded to the Complaint or appeared in this case.  On April 3, 2006, Plaintiff moved for the Clerk's entry of default against these defendants, which was granted.  [Docket Nos. 16-17.]  On August 18, 2006, Plaintiff moved for default judgment.  Plaintiff has filed certified mail return receipts signed by Newberry and Gilarski reflecting their receipt of Plaintiff's Motion for Default Judgment [Docket No. 33], yet they have failed to respond to that motion.

3

**DISCUSSION**

### I. Standard

Federal Rule of Civil Procedure 55(b) gives the Court the power to enter default judgments. Where a plaintiff's claim against a defendant is for a sum certain or a sum which can be made certain by computation, the clerk can, upon request of the plaintiff and upon affidavit of the amount due, enter judgment against the defendant for that amount plus costs. Fed. R. Civ. P. 55(b)(1). However, in awarding default judgment in a case where the plaintiff's claim is not for a sum certain or readily computable, "the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person" without certain additional protections. Fed. R. Civ. P. 55(b)(2). If the court determines that the defendant is in default, all well-pleaded allegations of the complaint, except those relating to the amount of damages, will be taken as true. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998).

"If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper." Fed. R. Civ. P. 55(b)(2). "A judgment by default may not be different in kind from or exceed in amount that prayed for in the demand for judgment." Fed. R. Civ. P. 54(c).

### II. Analysis

Default judgment is appropriate here. Defendants Newberry and Gilarski received notice

4

of the complaint, yet failed to answer or appear in this action. Defendants also received notice of the motion for default judgment, yet do not oppose it. These individuals, at one time trusted employees of Plaintiff, are neither infants nor incompetent. Therefore, the grounds for default are well-established. Default is all the more appropriate given that, in light of Defendants' criminal plea agreements, there appear to be few, if any, material issues of fact here; Newberry and Gilarski have pleaded guilty to the same conduct that forms the basis of the factual allegations against them in the Complaint.

Therefore, the only question remaining for the Court is what relief Plaintiff is owed. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2688; *Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.") (citations omitted). Plaintiff asks for a permanent injunction against Newberry and Gilarski and attorney's fees in the amount of $31,620.50.[1] The injunction sought is identical to that already imposed on all Defendants on a temporary basis via the TRO, and imposed permanently upon Defendants Shaw and Meacham pursuant to their settlement with Plaintiff. Plaintiff has pled (and to a large extent, proved) that Defendants misappropriated its trade secrets in violation of Indiana trade secret law. Taking Plaintiff's allegations as true, as the Court is required to do in this instance, Plaintiff is entitled to a permanent injunction against Defendants

---

[1] Plaintiff's Motion for Default Judgment contained billing records totaling $30,980.50, reflecting expenses through July 31, 2006, but counsel provided more detailed billing records, per the request of the Court, which include fees incurred through August 2006 totaling $31,620.50. [Docket No. 42.]

Newberry and Gilarski.

Plaintiff also seeks attorney's fees of $31,620.50 as either "actual loss" under Ind. Code § 24-2-3-4, or under the related attorney's fees provision, Ind. Code § 24-2-3-5.  (Lipton Aff., Ex. A.)[2]  If damages are awarded under the "actual loss" provision, and if willful and malicious misappropriation exists, the court may award exemplary damages of up to twice the damages award.  Ind. Code § 24-2-3-4.  Plaintiff urges the Court to find that its attorney's fees constitute "damages" because they are a direct result of Defendants' wrongful acts.  But it would be inappropriate to classify Plaintiff's attorney's fees as "actual loss."  U.S. courts follow the "American Rule," in which each party pays its own attorney's fees under normal circumstances.  *United States v. Scott*, 405 F.3d 615, 620 (7th Cir. 2005).  The "American Rule" classifies the award of attorney's fees as a matter of procedural law rather than remedial law, and therefore, not as an element of damages at all.  *Id.*  In any event, providing attorney's fees under the damages provision would render superfluous Ind. Code § 24-2-3-5(c), which explicitly deals with attorney's fees in trade secret cases.

Under Ind. Code. § 24-2-3-5, a court "may award reasonable attorney's fees to the prevailing party" if "willful and malicious misappropriation exists."  Such an award is appropriate here.  Under Indiana law, a "'prevailing party' is defined as a party who successfully prosecutes his claim or asserts his defense." *Allstate Ins. Co. v. Axsom*, 696 N.E.2d 482, 486 (Ind. Ct. App. 1998), citing *Strutz v. McNagny*, 558 N.E.2d 1103, 1110 (Ind. Ct. App. 1990).  By virtue of default, Plaintiff is the "prevailing party" against Newberry and Gilarski.  *See, e.g., In*

---

[2]  In this case, the Court analyzes the appropriateness of an award of fees only under state law provisions, not federal copyright law.  The copyright allegations in the Complaint pertain only to Shaw, and Plaintiff has only asserted a right to fees under Indiana trade secret law.

*re Oliver*, 729 N.E.2d 582, 583 (Ind. 2000) (party obtaining default judgment in prior proceeding was the "prevailing party"). Defendant Gilarski committed willful and malicious misappropriation by knowingly "us[ing] improper means to acquire knowledge" of RSC's Mix Book, and then disclosing it to Newberry without RSC's consent. Ind. Code § 24-2-3-2(2). And Newberry committed willful and malicious misappropriation by acquiring the contents of the Mix Book, knowing that it was acquired by improper means. Ind. Code § 24-2-3-2(1). Therefore, attorney's fees should be awarded against both Defendants.

The Court has wide discretion to fashion an appropriate award of attorney's fees. *See, e.g., Foley v. Mannor*, 844 N.E.2d 494, 501 (Ind. Ct. App. 2006) (citation omitted); *Lynn v. Windridge Co-Owners Ass'n, Inc.*, 743 N.E.2d 305, 314 (Ind. Ct. App. 2001) (citation omitted). In cases involving multiple defendants in which some defendants have settled out of the case, courts have been reluctant to award 100% of attorney's fees against the remaining defendants. *See, e.g., DirectTV, Inc. v. Walsh*, 2006 WL 3308668, at *4 (M.D. Pa. Oct. 12, 2006) (holding that lone non-settling defendant should not have to bear full burden of attorney's fees incurred while three other defendants were participating in the case); *Sheffer v. Experian Information Solutions, Inc.*, 290 F. Supp.2d 538, 545 (E.D. Pa. 2003) (imposing roughly three-fourths of common litigation costs against single defendant where three other defendants had been dismissed; though bulk of expenses would have been incurred had defendant been the only defendant, defendant was relieved of incremental costs relating to additional defendants); *Hudson River Fishermen's Ass'n v. Arcuri*, 862 F. Supp. 73, 78 (S.D.N.Y. 1994) (plaintiffs reduced original amount sought for attorney's fees against defaulting defendants by amount of settlement with individual nondefaulting defendant, which represented the charges specifically

7

attributable to the individual defendant).  Thus, the Court must devise an equitable method of apportioning fees to the defaulting defendants.  Nonetheless, the Court's primary concern is that Plaintiff, an innocent party, is made whole in the face of willful trade misappropriation by Defendants.  Therefore, in reviewing the motion for fees and costs, the Court will err on the side of compensating Plaintiff.

Plaintiff's request for $31,620.50 in attorney's fees is fairly summarized as follows: $1,320.00 for activities related to obtainment of a copyright; $5,007 for activities purely related to settlement with Defendants Shaw and Meacham and to the joint motion for permanent injunction that arose out of that settlement; $7,382.50 for time spent primarily on Plaintiff's motion for default and consultation with authorities regarding defaulting Defendants or with criminal counsel for defaulting Defendants; $15,301 for work on the complaint, TRO, preliminary injunction, discovery, and general strategy and communications; and $2,610 in billing entries with multiple activities, some of which apply exclusively to the appearing Defendants.

The Court will not award Plaintiff its attorney's fees incurred in registering a copyright or in settling with Defendants Shaw and Meacham.  Plaintiff has not explained how its decision to register a copyright in late January, *after* it apparently learned of Defendants' misconduct, is related to enforcing its rights in this litigation.  It would also be inappropriate to saddle the defaulting Defendants with fees incurred in settling the case with the two appearing Defendants.  Plaintiff should have factored such fees into its settlement negotiations with those Defendants.  Therefore, these fees, totaling $6,327, will be excluded.

However, the Court will award all fees for work relating specifically to the defaulting

8

Defendants or to all Defendants generally.  The time spent preparing case strategy and drafting the complaint, the preliminary injunction, and discovery (which was minimal in this case) is largely a fixed cost – these fees would have been incurred whether there were one defendant or four.  Therefore, it is appropriate to impose these fees, totaling $22,683.50, in full.

The remainder of the fees, $2,610, were incurred while conducting multiple tasks, some of which pertained only to Shaw and Meacham.  But there is no way of knowing what part of these fees relate only to those appearing Defendants.  To reiterate, the Court should err on the side of the Plaintiff, the innocent party, and not on that of the tortfeasors.  Therefore, the Court will award 80% of those fees, or $2,088.

Plaintiff also seeks its litigation expenses of $1,463.67.  Reasonable litigation expenses are part of the reasonable attorney's fee allowed by Ind. Code 24-2-3-5.  *See, e.g., Harco, Inc. of Indianapolis v. Plainfield Interstate Family Dining Assoc.*, 758 N.E.2d 931, 942-44 (Ind. Ct. App. 2001) (general provision governing the award of attorney's fees, Ind. Code 34-52-1-1(b), encompassed miscellaneous litigation costs); *cf. Heiar v. Crawford County Wis.*, 746 F.2d 1190, 1203-04 (7th Cir. 1984) ("expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in his hourly billing rates – expenses for such things as postage, long-distance calls, xeroxing, travel, paralegals, and expert witnesses – are part of the reasonable attorney's fee allowed" by federal provision awarding fees in civil rights cases).  Most of Plaintiff's expenses consist of filing fees, copying, fax, and phone charges, and online legal research.  These are all reasonable.  However, Plaintiff also seeks $610.00 in copyright fees for a copyright registered in late January.  As explained above, Plaintiff has not explained how copyright registration relates to fees and expenses incurred in this litigation.  Therefore, the

9

copyright fees will be excluded, leaving a total award of $853.67 in expenses.

## CONCLUSION

The Court, being duly advised, **GRANTS** the Motion for Default Judgment [Docket No. 30] and orders the following:

1. Defendants Newberry and Gilarski are hereby permanently enjoined from violating the terms and conditions of the TRO previously entered in this case.  As such, Defendants Newberry and Gilarski, their officers, agents, servants, employees, and attorneys or those persons in active concert or participation with them are hereby permanently restrained from:

   (a) using and/or maintaining possession, custody, or control of the original or any copy of any personal or intellectual property belonging to RSC or authorizing any third party to so use or maintain possession, custody or control of such property;

   (b) distributing, publishing or otherwise disclosing to any third party the Mix Book or any RSC customer list, or authorizing any third party to so distribute, publish or otherwise disclose such information;

   (c) imitating, copying, using, reproducing, displaying, distributing, creating derivative works of, or authorizing any third party to imitate, copy, use, reproduce, display, distribute, or create derivative works of any portion of the RSC website including, but not limited to, the photograph which is the subject of a specific copyright registration.

   (d) using any assets of Defendant Shaw whether cash or otherwise to pay any costs, attorneys' fees, expenses or any other sum related to or arising out of the defense of any criminal charges brought or which may be brought against any of the individually named Defendants which are related in any way to the facts alleged in the complaint and specifically that Shaw be barred from indemnifying, for any of the criminal charges, any of the individually named Defendants without strict compliance with Ind. Code § 23-1-37-1 et seq.

2. Plaintiff is awarded attorney's fees and expenses of $25,625.17 jointly and severally against Defendants Newberry and Gilarski.

The Court will retain jurisdiction to enforce the terms of the permanent injunction.

The Clerk is directed to enter **FINAL JUDGMENT** against Defendants Newberry and Gilarski.  Having been advised by Plaintiff that the settlement between Plaintiff and Defendants Shaw and Meacham has been completed, the Court orders that this case be **TERMINATED**.

**SO ORDERED.**

ENTERED:  January 9, 2007

s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT